# IN THE SUPREME COURT OF THE STATE OF NEVADA

TIMM PEDDIE, INDIVIDUALLY,
Appellant,
vs.
SPOT DEVICES, INC., A NEVADA
CORPORATION; HAWS
CORPORATION, A NEVADA
CORPORATION; SPOT
INVESTMENTS, LLC, A NEVADA
COMPANY; AND JOHN PETTIBONE,
INDIVIDUALLY,
Respondents.

No. 72721



FILED

OCT 02 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING*

This is an appeal from a district court order granting partial summary judgment in a dissenters' rights action. Second Judicial District Court, Washoe County; David A. Hardy, Judge and Steven Elliott, Senior Judge. We review the summary judgment de novo, *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005), and reverse and remand.

Appellant Timm Peddie filed a complaint against respondents, seeking declaratory and injunctive relief and damages for several causes of action based on two debt-to-equity transactions—one in May 2011, and another in January 2013—concerning respondent Spot Devices, Inc., which Peddie alleged diluted his shareholder's equity in Spot Devices.[1] According to the complaint, the transactions amounted to conversion or constituted a

---

[1]As the parties are familiar with the facts, we address only those relevant to our holding.

18-38379

plan of exchange or mergers or de facto mergers of Spot Devices and the investing companies, giving Peddie, who was a shareholder and board member of Spot Devices, dissenters' rights under *Village Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 112 P.3d 1082 (2005) and NRS 92A.380.

After the district court granted in part a series of motions to dismiss versions of Peddie's complaint, with leave to amend, respondents Haws Corporation and John Pettibone filed a motion for partial summary judgment on Peddie's remaining claims for declaratory and injunctive relief to the extent Peddie was alleging the existence of a de factor merger. They argued that neither transaction constituted "a merger under Nevada law or under the court-created de facto merger doctrine that, in Nevada, exists for purposes of successor liability, not dissenter's rights." Due to an unavoidable absence, the presiding district court judge, the Honorable David A. Hardy, did not hear and decide the motion for summary judgment, and Senior Judge Steven Elliot heard the motion for summary judgment, and rendered a decision granting the motion in Judge Hardy's absence.

The order stated that the court had previously found that "while there was no basis to assert a statutory dissenter[s'] rights claim pursuant to NRS 92A.380, Peddie set forth sufficient facts" in his second amended complaint to state a claim for a de facto merger. The district court found that, while the *Village Builders* factors could be extended beyond successor liability actions, Peddie could not establish a de facto merger between Spot Devices and Haws Corporation arising from the 2011 debt-to-equity transaction, giving rise to dissenters' rights, because Spot Devices continued to exist as a viable entity and there was no evidence demonstrating Haws Corporation assumed Spot Devices' obligations. It noted that Peddie still holds his 3,336,855 shares in Spot Devices and that

he was not forced to give up these shares and to accept shares in Haws Corporation. The district court further found that Peddie was "not precluded from pursuing his remaining claims for relief and seeking redress through them."

In resolving Peddie's subsequent motion for clarification and reconsideration, Judge Hardy stated he would not have granted summary judgment because there remained factual questions on the de facto merger claim, but nevertheless denied reconsideration, concluding he lacked authority to revisit the senior judge's decision simply because he disagreed with it. As the partial summary judgment extinguished all remaining claims against Spot Devices, and the district court determined that "appellate review is necessary given the unique procedural events of this case," the court stayed trial and, concluding that there "is no just reason for delay," certified the order as final "pursuant to NRCP 54(b) for immediate appeal as to all parties with regard to [the] issue of the existence of a de facto merger."

*Whether there is a genuine issue of material fact regarding whether the May 2011 debt-to-equity transaction*

Peddie argues that the May 2011 transaction whereby Haws converted $6.7 million of Spot debt into 87 million shares of Spot Devices common stock gave rise to dissenters' rights under NRS 92A.380(1)(a). This transaction, Peddie argues, was a "merger that occurred over the course of several years, with this transaction serving as Haws' complete and final absorption into its subsidiary, Spot." Peddie argues that whether there was a merger between Haws and Spot Devices is a disputed issue of fact, and when viewed in the light most favorable to Peddie, a reasonable jury could find that there was a de facto merger between Haws and Spot, "that culminated with Haws' full takeover of Spot through the debt-to-equity



transaction." Peddie further argues that the May 2011 transaction satisfies the *Village Builders* test.

Haws and Pettibone argue that the May 2011 transaction did not constitute a de facto merger, and that it simply resulted in a dilution of shares for Spot Devices shareholders, and increased the shares owned by Haws, Spot Devices' largest investor and creditor. Haws and Pettibone argue that Peddie failed to offer evidence sufficient to raise a genuine issue of material facts as to whether: (1) Spot Devices' business was being carried out by Haws; (2) Spot Devices' shareholders were now Haws' shareholders; (3) Spot Devices ceased its ordinary business operations; or (4) Haws assumed Spot Devices' obligations. All respondents argue that Peddie fails to satisfy the *Village Builders* test.

In relevant part, Nevada's dissenters' right statute, NRS 92A.380, states:

> 1. Except as otherwise provided in NRS 92A.370 and 92A.390 and subject to the limitation in paragraph (f), any stockholder is entitled to dissent from, and obtain payment of the fair value of the stockholder's shares in the event of any of the following corporate actions:
>
> (a) Consummation of a plan of merger to which the domestic corporation is a constituent entity:
>
> (1) If approval by the stockholders is required for the merger by NRS 92A.120 to 92A.160, inclusive, or the articles of incorporation, regardless of whether the stockholder is entitled to vote on the plan of merger; or
>
> (2) If the domestic corporation is a subsidiary and is merged with its parent pursuant to NRS 92A.180.

2. A stockholder who is entitled to dissent and obtain payment under NRS 92A.300 to 92A.500, inclusive, may not challenge the corporate action creating his entitlement unless the action is unlawful or fraudulent with respect to him or the domestic corporation.

Thus, NRS 92A.380(1)(a) sets forth circumstances under which a merger will give rise to shareholders' rights to dissent and receive fair market value for their shares.

A merger occurs where "two corporations unite into a single corporate existence." *HD Supply Facilities Maint., Ltd. v. Bymoen*, 125 Nev. 200, 206, 210 P.3d 183, 186–87 (2009) (internal quotation marks omitted). There are, however, instances where a corporate transaction, "although not in form a merger, is in substance a consolidation or merger of seller and purchaser." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003) (internal quotation marks omitted). To avoid "patent injustice that might befall a party simply because a merger has been called something else," courts have created the de facto merger doctrine. *Abundance Partners LP v. Quamtel, Inc.*, 840 F. Supp. 2d 758, 769 (S.D.N.Y. 2012); *see also In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1010, 1017 (D. Mass. 1989).

This court has recognized the de facto merger doctrine in the context of successor liability, explaining that although generally, "when one corporation sells all of its assets to another corporation the purchaser is not liable for the debts of the seller," exceptions to this rule may apply, including the de factor merger exception. *Village Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 268–69, 112 P.3d 1082, 1087 (2005). The de facto merger exception "permits courts to hold the purchaser of a business's assets liable for the seller corporation's conduct when the parties have essentially

achieved the result of a merger although they do not meet the statutory requirements for a de jure merger." *Id.* at 268–69, 112 P.3d at 1087. In order to determine whether a party has established a prima facie case for de facto merger, this court weighs four factors equally: "(1) whether there is a continuation of the enterprise, (2) whether there is a continuity of shareholders, (3) whether the seller corporation ceased its ordinary business operations, and (4) whether the purchasing corporation assumed the seller's obligations." *Id.* at 269-70, 112 P.3d at 1087-88. While given equal weight, at least three of the four factors must be present. *See id.* at 273, 112 P.3d at 1090 ("[W]e conclude that a de facto merger does not exist when only two of the four factors exist, and we affirm the district court's decision to grant summary judgment."); *see also* Sheila A. Bentzen, *The De Facto Merger Doctrine Revisited,* 62 Drake L. Rev. 91, 108 (2013) ("[U]nder Nevada law all factors must be weighed equally, but at least three of the four must be present for the court to convert a sale of assets into a merger in fact."). "[T]his approach is consistent with the principles underlying the de facto merger exception, which is a judge-made rule that rests on general equitable principles." *Id.* at 269–70, 112 P.3d 1082, 1088 (2005) (internal quotation marks omitted). Thus, "if the plaintiff sets forth facts sufficient to establish a prima facie case of [de facto merger], the issue becomes one of fact, which must be determined by the jury." *Id.* at 268, 112 P.3d at 1087.

Because the de facto merger doctrine is an equitable remedy designed to address patent injustice in situations where the governing statute does not provide a remedy even though the merger statutes intended for a remedy to exist, we hold that "it may extend to debt-to-equity transactions. *See In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution,* 712 F. Supp. 1010, 1017 (D. Mass. 1989) ("Given

the seemingly infinite permutations of corporate acquisitions emerging in today's climate of frenzied merger and acquisition activity, it would be unduly technical to limit the reach of the *de facto* merger doctrine to assets sales made solely with the purchaser's own stock."). Thus, we analyze this case under the test espoused in *Village Builders*.

### Continuation of the enterprise

"To determine whether there is a continuation of the enterprise, courts generally look to whether there is a continuity of management, personnel, physical location, assets and general business operations between the purchaser and the seller." *Vill. Builders 96, L.P.*, 121 Nev. at 270, 112 P.3d at 1088 (internal quotation marks omitted). This factor "describes a situation where the parties to a transaction become owners together of what formerly belonged to each." *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 965 N.Y.S.2d 284, 297 (Sup. Ct. 2013). It "is satisfied where the purchasing corporation pays for the acquired assets with shares of its own stock. The seller therefore continues to own the assets it has sold through its ownership of shares in the purchasing corporation."

Here, Haws forgave $6.7 million in debt in exchange for a substantial number of shares in Spot Devices in the May 2011 debt-to-equity transaction. However, the entities remained separate and Haws obtained none of Spot Device's assets in exchange. Thus, this did not involve a situation where they "bec[a]me owners together of what formerly belonged to each." *Countrywide Home Loans, Inc.*, 965 N.Y.S.2d at 297. We, therefore, conclude that the district court properly determined that the continuation of enterprise factor was not satisfied.

*Continuity of shareholders*

"The continuity of shareholders element is designed to identify situations where the shareholders of a seller corporation retain some ownership interest in their assets after cleansing those assets of liability." *United States v. Gen. Battery Corp.*, 423 F.3d 294, 306–07 (3d Cir. 2005). As *Village Builders* explained,

> when two companies merge, the shareholders of the seller become shareholders of the buyer. As a result, these individuals share in the successor corporation's profits making it just to attach the seller's liabilities to the buyer to avoid any inequity that might result from allowing a shareholder to shed liability but retain profit. However, when this factor is not present these courts have concluded that sound policy does not support imposing the predecessor's liabilities upon the successor when it has already paid a substantial price for the assets of the predecessor.

121 Nev. 261, 269, 112 P.3d 1082, 1088 (2005) (internal quotation marks omitted). "Continuity of ownership is established . . . where the owners of the predecessor enterprise become a constituent part of the successor by retaining some ongoing interest in their assets." *Gen. Battery Corp.*, 423 F.3d at 307 (internal quotation marks omitted).

Here, Spot Device's shareholders cleansed Spot Devices of liability by wiping away its debt in the debt-to-equity conversion; however, they did not obtain any ownership interest in the "purchasing" company, Haws, or any of its related entities as a result of the May 2011 transaction. Because the record suggests that they remained shareholders of only Spot Devices, we conclude that the district court also properly found that this factor was not met.

*Cessation of ordinary business operation*

A corporation does not need to be legally dissolved to satisfy this factor, "so long as the acquired corporation is shorn of its assets and has become, in essence, a shell." *U.S. v. Gen. Battery Corp., Inc.,* 423 F.3d 294, 305 (3d Cir.2005) ("barren continuation" of the seller company does not bar application of the de facto merger doctrine); *Morales v. City of N.Y.,* 849 N.Y.S.2d 406, 412 (N.Y.Sup.Ct. 2007) (same). Nevertheless, the "cessation of the ordinary business by, and dissolution of, the predecessor [must be done] as soon as practicable." *Cont'l Ins. Co. v. Schneider, Inc.,* 810 A.2d 127, 135 (Pa. Super. Ct. 2002), aff'd, 582 Pa. 591, 873 A.2d 1286 (2005); *see also Ladjevardian v. Laidlaw–Coggeshall, Inc.,* 431 F. Supp. 834, 838, 839 (S.D.N.Y., 1977) (concluding that there was no de facto merger, where selling corporation "continued to exist after the sale and continues to be entitled to the installment payments for the assets," although plaintiffs alleged that it was only an "inactive shell".).

Here, it is undisputed that Spot continued to exist for two years after the May 2011 transaction, and even beyond, albeit in bankruptcy proceedings. Thus, we perceive no error in the district court's conclusion that this factor is not satisfied because Spot continued to operate for nearly two years before entering bankruptcy and, to the extent there was a cessation of business as a result of the transaction, it was not done as soon as practicable.

*Assumption of those obligations necessary for normal business operations*

When viewed in the light most favorable to Peddie, Haws' 91% ownership of Spot Devices' shares may suggest an assumption of certain business operation. Nevertheless, there is no evidence of a contract evincing Haws' intent to assume any obligation related to Spot Devices.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

Nevertheless. In addition, the record reflects that Spot continued to exist for two years after the May 2011 transaction, and thus, it was not possible for Haws to assume the obligations because Spot had not given up those obligations during that time.

Because Peddie does not make a prima facie case with regard to at least three of the *Village Builders* factors regarding the May 2011 transaction, we conclude that the district court properly determined that Peddie's claims of de facto merger regarding the May 2011 transaction fail. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).

*Whether genuine issues of material fact exist as to whether the January 2013 transaction constitutes a de facto merger*

Peddie argues that the January 2013 exchange for forgiveness of $1.5 million in Spot Devices debt, whereby Haws transferred Spot Device's only remaining assets into a separate Haws subsidiary, Cirrus Systems, LLC, constituted a de facto merger. Following this second transaction, Peddie argues, "Spot's name was changed to Spot Holdings, Inc., and all Spot operations were promptly wound down, while Cirrus took over all that remained of Spot, with the same address, employees, officers, and owners." Peddie argues that the district court erred by basing its order on "factual findings that are hotly contested and should have precluded summary judgment." Peddie further argues that because the district court did not address the January 2013 transaction, the summary judgment order is overbroad to the extent it addressed this claim, and that when viewed in the light most favorable to Peddie, it satisfies the *Village Builders* de facto test.

Haws and Peddie contend that Peddie inconsistently argues that Spot Devices merged into Haws in 2011, and also merged into Cirrus two years later, and that "[i]t is axiomatic that if Spot merged into Haws in

2011, Spot could not have continued to exist and subsequently merged into Cirrus in 2013." Respondents further argue that the 2013 transaction does not satisfy the *Village Builders* test.[2]

*Continuity of enterprise*

Peddie included various factual allegations in his second amended complaint that support this factor. For example, he alleged that Pettibone signed the "so called agreements and assignments documenting the expropriation of Spot assets and liabilities," and that "some of the[se]

---

[2]Haws and Pettibone argue that Peddie abandoned his claim that the 2013 transaction constituted a de facto merger because he failed to address it (1) in opposing their summary judgment motion, which they assert addressed both the 2011 and 2013 transactions, and (2) at the hearing on the motion. Spot Devices similarly argues that Peddie "essentially withdrew this issue, as evidenced by his briefs and statements in open court." The record suggests that Peddie raised arguments and factual allegations related to the January 2013 transaction in his second amended complaint, his opposition to the motion to dismiss his second amended complaint, and his motion for clarification and/or reconsideration of the summary judgment. In addition, in his opposition to partial summary judgment, Peddie stated that "Haws completely and improperly absorbed Spot through its forced debt-to-equity conversion and Haws and Pettibone continued to circumvent obligations to Peddie as a dissenting shareholder by selling off assets to Carmanah, spinning other key assets off into Cirrus and Onstream and bankrupting Spot." While Peddie's deposition testimony suggests that he may have been focusing on the May 2011 transaction in making his de facto merger claim, we conclude that the record does not suggest that he therefore abandoned any claim regarding the January 2013 transaction. *See Yochum v. Davis*, 98 Nev. 484, 487, 653 P.2d 1215, 1217 (1982) ("[T]he court must give due consideration to the state's underlying basic policy of resolving cases on their merits wherever possible"). In addition, the NRCP 54(b) certification acknowledges that all of Peddie's claims against respondents have been resolved and it is broadly worded to encompass the issue of the existence of a de facto merger. Thus, we conclude that Peddie may properly raise arguments regarding this transaction in this appeal.

agreements were only signed by Pettibone on behalf of both Haws and Spot." He also alleged that "Cirrus uses the 'SIMA' system to carry on its business operations, which is the same core technology that Spot used to carry on its business operations." He further alleged that various members of management, and employees, of both Cirrus and Haws were management or employees for Spot Devices. He provided several examples of the continuity of enterprise, including that Dean McKay who has been president, CEO, and Chairman of the Board of Cirrus, from "July 2012 to the present," has also been a member of the board of directors for Haws from June 2008 to the present," and "was . . . chairman of the board of directors and CEO of Spot from January 2011 to December 2012." Peddie also alleged that "Cirrus was officially founded in 2012 and headquartered inside the Haws/Spot [Devices]/[Spot Investments, LLC] office."

We conclude that Peddie has made a prima facie showing of "continuity of management, personnel, physical location, assets and general business operations between the purchaser and the seller." *Vill. Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 270, 112 P.3d 1082, 1088 (2005). Peddie substantiated his allegations of the overlap of managers, employees, and physical location with sufficient evidence to support a conclusion that there was a continuity of enterprise, and thus survive a motion for summary judgment. In addition, he made a prima facie showing that Cirrus used Spot Devices' assets in its own general business operation to support that Cirrus continued the same business operations as Spot Devices, with many of the same individuals serving as management and key personnel.

*Continuity of shareholders*

A number of Peddie's factual allegations in his second amended complaint also support this factor. For example, he alleged that Spot Device's "remaining operations, assets and liabilities were merged into Cirrus, which had been created by respondents." He also alleged that "[i]n December 2012, [respondents] agreed to invest an additional $1 million in Cirrus to pursue mining operations with the newly merged Spot assets" and that the assets were acquired in exchange for shares. Finally, Peddie alleged that "Haws, Pettibone, Thomas White and the majority of Spot shareholders became shareholders of Cirrus when Cirrus was formed in 2012," and that "Haws holds a majority interest in Cirrus."

When viewed in a light most favorable to Peddie, we conclude that his allegations make a prima facie case for continuity of shareholders and respondents failed to demonstrate an absence of a genuine dispute of material fact in this regard. Peddie alleged that by way of the January 2013 transaction, respondents retained interest in Spot Device's assets by continuing their statuses as shareholder and managers of Cirrus. Thus, genuine factual disputes remain as to whether "the owners of the predecessor enterprise, Spot Devices, became a constituent part of the successor enterprise, Cirrus, by retaining some ongoing interest in their assets. *United States v. Gen. Battery Corp.*, 423 F.3d 294, 307 (3d Cir. 2005).

*Cessation of ordinary business operations*

Peddie's second amended complaint contains factual allegations supporting this factor. For example, Peddie alleged that "Pettibone threatened that he would leave Spot as an empty shell. This happened, when defendants sold assets of Spot to Carmanah and spun remaining assets and intellectual property into Cirrus Systems, LLC." He further alleged that "Spot ceased operations after its assets, liabilities,

personnel, officers, and investors were merged with Cirrus," that "[a]ccording to John Pettibone, Spot ceased operations at the end of July 2013," and that "Spot as a Nevada domestic corporate entity has been in default since January 2014."

Because the record supports a conclusion that Spot was stripped of its assets, and is only in existence due to the bankruptcy proceedings, we conclude that Peddie has made a prima facie showing that Spot was shorn of its assets and has become, in essence, a shell. *U.S. v. Gen. Battery Corp., Inc.*, 423 F.3d 294, 305 (3d Cir.2005) ("barren continuation" of the seller company does not bar application of the de facto merger doctrine); *Morales v. City of N.Y.*, 849 N.Y.S.2d 406, 412 (N.Y.Sup.Ct. 2007) (same). While Spot may have continued to generate gross product sales revenue after the 2013 transaction, the record suggests that that there was a winding down of Spot, in light of the fact that its assets had been sold, and it went into bankruptcy a few months afterward.

*Assumption of obligations necessary to carry out normal business operations*

Peddie included several factual allegations in his second amended complaint that are sufficient to support this factor. For example, he alleged that Cirrus uses the same "core technology" that Spot used to carry on its business operations. He also asserted that "Cirrus engages in the same general business Spot engaged in with regards to the SIMA technology and was in the same physical location as Spot from 2012 up until recently." and that the assets Cirrus acquired came with associated liabilities that were merged into Cirrus.

We conclude that Peddie's factual allegations are sufficient to make a prima facie showing that respondents, by way of Cirrus, assumed the obligations necessary to carry out normal business operations. As

Peddie notes, Cirrus continued to run a business operation that was similar to Spot Device's, with assets that it had acquired from Spot Devices. At a minimum, it assumed the liabilities associated with these assets, in addition to a financial services lease, which respondents concede Cirrus assumed.

Because Peddie makes a prima facie showing with all four of the *Village Builders* factors, we hold that the district court erred by granting summary judgment, as "the issue [has] become[] one of fact, which must be determined by the jury." 121 Nev. at 268, 112 P.3d at 1087.

*Whether the conversion claim is properly before this court*

Peddie argues that "respondents never sought summary judgment regarding any plan of conversion theory" as the basis supporting dissenters' rights, so the district court erred by granting partial summary judgment on an issue outside of the motion. Peddie further argues that "[t]he January 2013 transaction . . . was a plan of conversion in which the business was converted from a corporation (Spot Devices) into a limited liability company (Cirrus), and that his second amended complaint contains numerous additional factual allegations to support his claim that he is entitled to dissenter's rights based on a plan of conversion.

In its order on the motion to dismiss Peddie's first amended complaint, the district court dismissed the claims against Spot Devices and Spot Investments for interference with prospective economic advantage and unjust enrichment, but declined to dismiss the remaining claims, finding that although the complaint failed to allege the statutory corporate actions that would allow Peddie to dissent and demand payment under NRS 92A.380(1)(b)-(f), he should be allowed leave to amend the complaint based on a merger theory under NRS 92A.380(1)(a), or based on a common law de facto merger theory. The district court further found that Peddie failed to

assert a claim for a plan of conversion or a plan of exchange under NRS 92A.80(1)(b) or (c), as the factual allegations do not describe a conversion or exchange. The court therefore declined to dismiss the injunctive and declaratory relief claims to the extent that they were grounded on dissenter's rights based on merger or de facto merger, instead granting leave to amend to further develop these issues.

Thus, the record suggests that the injunctive and declaratory relief claims were dismissed by the district court to the extent they were grounded on any of the theories set forth in NRS 92A.380(1)(b)-(f), and it declined to grant leave to amend on those theories. Furthermore, at no point between entry of the district court's order partially granting the motion to dismiss the first amended complaint, and entry of the district court's order granting partial summary judgment of Peddie's second amended complaint, did Peddie make any cogent arguments related to whether the transactions at issue constituted a plan of conversion, as opposed to a merger or de facto merger. He likewise did not argue that the district court had improperly dismissed his claim that dissenter's rights attached by way of a plan of conversion. Indeed, Peddie concedes that this issue was not briefed before the district court nor was it presented during oral argument on the motions. We conclude that this issue was not adequately addressed below and is therefore improperly raised on appeal. *See In re Amerco Derivative Litig.*, 127 Nev. 196, 217, n.6 252 P.3d 681, 697, n.6 (2011) (declining to consider an issue on appeal as it was not properly before the district court).

*Whether the order denying Peddie's motion for clarification and/or reconsideration is properly before this court denying Peddie's motion for clarification and/or reconsideration is properly before this court*

Peddie argues that Judge Hardy erred by failing to reconsider Senior Judge Elliott's partial summary judgment order, pointing out at the hearing that Judge Hardy believed that the grant of summary judgment was "clearly erroneous, because of the fact questions at issue."

Under NRCP 54(b), a district court has authority to review and revise a judgment before it enters judgment adjudicating the rights of all the parties. *Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 479, 215 P.3d 709, 716–17 (2009). However, a judge's ability to revise another judge's order is circumscribed. *See Masonry and Tile v. Jolly, Urga & Wirth*, 113 Nev. 737, 941 P.2d 486 (1997) ("A district court may reconsider a previously decided issue if substantially different evidence is introduced or the decision is clearly erroneous."); Shauna L. Cully, Annotation, *Power of Successor Judge Taking Office During Term Time to Vacate, Set Aside, or Annul Judgment Entered by His or Her Predecessor.* 51 A.L.R.5th 747 (1997).

Judge Hardy's order states that he would not have granted summary judgment because he believed there were "factual questions underlying the de facto merger claim." However, he did not precisely identify what these factual questions were. He further conceded that "[t]here was no showing that Senior Judge Elliott overlooked or misapprehended law," and that "[t]here was no substantially different evidence or clarifying, intervening law," permitting him to intervene. Even if Judge Hardy did state that he believed Judge Elliott to have clearly erred, this court has repeatedly held that a district court's oral pronouncement from the bench is "ineffective for any purpose." *See Rust v. Clark Cty. Sch. Dist.*, 103 Nev. 686, 689, 747 P.2d 1380, 1382 (1987). As no genuine issue

of material fact exists as to the May 2011 transaction because Peddie did not demonstrate at least four of the *Village Builders* factors, Judge Hardy did not abuse his discretion in ultimately refusing to intervene.

Therefore, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

cc:  Chief Judge, The Second Judicial District Court
     Hon. Steven Elliott, Senior Judge
     David Wasick, Settlement Judge
     Brownstein Hyatt Farber Schreck, LLP/Reno
     Holland & Hart LLP/Reno
     Dotson Law
     Washoe District Court Clerk