MASONRY AND TILE CONTRACTORS ASSOCIATION OF SOUTHERN NEVADA, ANTHONY MARNELL, GEORGE MARNELL, CARMINE CATELLO, BILL DALEY, JIM CAROLLO, BOB ALLYN MASONRY, INC., CATELLO TILE AND MARBLE CONTRACTORS, INC., JIM CAROLLO MASONRY, INC., BILL DALEY MASONRY, INC., AND MARNELL MASONRY, APPELLANTS/CROSS-RESPONDENTS, v. JOLLEY, URGA & WIRTH, LTD., A NEVADA CORPORATION, ROGER WIRTH, AN INDIVIDUAL, AND JOLLEY, URGA, WIRTH & WOODBURY, A PARTNERSHIP, RESPONDENTS/CROSS-APPELLANTS.

No. 26426

July 1, 1997                                    941 P.2d 486

[Rehearing denied January 30, 1998]

*Kirshman & Harris,* Las Vegas; *Altshuler, Berzon, Nussbaum, Berzon & Rubin,* San Francisco, California, for Appellants/Cross-Respondents.

*Rawlings, Olson, Cannon, Gormley & Desruisseaux,* Las Vegas; *Gibson, Dunn & Crutcher* and *William F. Highberger,* Los Angeles, California, for Respondents/Cross-Appellants.

## OPINION

By the Court, SHEARING, C. J.:

This is an action for legal malpractice. Appellants are several masonry and tile contractors in Las Vegas ("contractors") and their multi-employer bargaining association, the Masonry & Tile Contractors Association of Southern Nevada ("MTCA"). Respondents are the attorneys who defended appellants in a 1981 federal court action under the Labor-Management Relations Act § 301, 29 U.S.C. § 185(a) (1988), entitled Bricklayers & Allied Craftsmen, Local Union No. 3 v. Masonry and Tile Contractors Association of Southern Nevada, No. CV-S-81-726-RDF (D. Nev., filed October 21, 1981) ("the Promotion Fund case"). In that case, the union plaintiffs pleaded causes of action against

appellants alleging, *inter alia,* that appellants had violated the parties' trust agreement by spending promotion fund monies improperly. Appellants eventually settled with the union plaintiffs in 1990.

Appellants brought this malpractice action in 1989 in the Eighth Judicial District Court, Clark County. Appellants alleged, *inter alia,* that respondents negligently failed to plead the affirmative defense of mandatory exhaustion of contractual arbitration remedies in the *Promotion Fund* case, and that timely assertion of that defense would have resulted in the dismissal of that case with prejudice, saving appellants years of expensive litigation.[1] Appellants also allege now that failure to timely plead the affirmative defense forced appellants to enter into a costly settlement.

The key issue of causation in the malpractice action is whether exhaustion of contractual arbitration remedies would have been a valid defense in the *Promotion Fund* lawsuit. Because that issue raises a pure question of law, the parties filed cross-motions for summary judgment in early 1991.[2] Those cross-motions principally focused on the narrow question of whether the underlying *Promotion Fund* dispute was subject to mandatory contractual arbitration.

After all of the Las Vegas trial judges recused themselves,[3] the case was assigned to Visiting Judge Mark Handelsman from the Second Judicial District in Reno. In his written decision regarding the motions for summary judgment, Judge Handelsman concluded, after a detailed review of the applicable federal court precedent, that the subject matter of the underlying *Promotion Fund* dispute was arbitrable as a matter of law, unless the right to compel arbitration was waived, pursuant either to the integrated collective bargaining and trust agreements or to the trust agreement alone as a "labor contract." Judge Handelsman rested his analysis on the presumption of arbitrability under federal labor law.

Several months later, Judge Handelsman removed himself from

---

[1]In the *Promotion Fund* dispute, respondents, on behalf of the appellants, filed an answer to the complaint from the union and raised a series of affirmative defenses, but failed to raise the single affirmative defense that appellants claim would have terminated the *entire* damages action in favor of appellants—the union's failure to exhaust its mandatory contractual arbitration remedy. The exhaustion defense was not raised in the *Promotion Fund* case until 1987, after respondents had been replaced by new counsel. By then, however, it was too late, as the federal district court ruled that the contractors had waived the arbitral exhaustion defense by failing to raise it in a timely manner.

[2]Appellants filed a motion for partial summary judgment.

[3]The record does not disclose why no judge in Las Vegas was able to hear the case.

the case for personal reasons, and the case was assigned to Senior Judge Llewellyn Young. Several months after Judge Handelsman's decision, respondents filed a motion asking Judge Young to reconsider the arbitrability issue. Judge Young eventually denied respondents' motion for reconsideration.

Judge Young passed away, and several months later the case was assigned to Visiting Judge Peter Breen. Respondents then filed a motion for summary judgment. Respondents maintained that the *Promotion Fund* dispute was not arbitrable, contrary to Judge Handelsman's conclusion. Respondents also set forth three new affirmative defenses in which they alleged that appellants had improperly "assigned" their malpractice claim to the union in settling the *Promotion Fund* litigation.[4]

This time, respondents' motion was successful. Judge Breen ruled that the underlying *Promotion Fund* dispute was not arbitrable, and that respondents were therefore entitled to summary judgment. In addition, Judge Breen accepted respondents' argument that the *Promotion Fund* settlement agreement violated Nevada's public policy against assignment of legal malpractice claims, thus requiring dismissal of the entire action. Respondents moved for costs and fees. However, Judge Breen only awarded $22,041.20 in costs to respondents and denied respondents' request for attorney fees. This appeal and cross-appeal followed.

On appeal, appellants claim that Judge Breen erred in concluding that the *Promotion Fund* dispute was not arbitrable and in concluding that the 1990 *Promotion Fund* settlement agreement violated the public policy against assignment of malpractice claims. They assert, therefore, that summary judgment in favor of respondents was improper. On cross-appeal, respondents contend that Judge Breen erred in denying their request for attorney fees and in limiting their recoverable costs.

Summary judgment is appropriate only when no genuine issue of material fact remains for trial and the moving party is entitled to judgment as a matter of law. NRCP 56(c); Walker v. American Bankers Ins., 108 Nev. 533, 536, 836 P.2d 59, 61 (1992). "This court's review of an order granting summary judgment is de novo." *Walker,* 108 Nev. at 536, 836 P.2d at 61. Because no facts are in dispute regarding arbitrability, this court must simply

---

[4]Respondents' first defense alleged that the contractors were no longer real parties in interest under NRCP 17, as a result of the "assignment"; their second defense alleged that the "assignment" violated common law prohibitions against champerty and maintenance; their third defense alleged that the "assignment" violated Nevada public policy.

determine if respondents were entitled to judgment as a matter of law on that issue.

Appellants contend that Judge Breen erred in granting summary judgment for respondents by concluding that the *Promotion Fund* dispute was not arbitrable because Judge Breen lacked authority to reconsider Judge Handelsman's prior ruling that the dispute was arbitrable.

A district court may reconsider a previously decided issue if substantially different evidence is subsequently introduced or the decision is clearly erroneous. *See* Little Earth of United Tribes v. Department of Housing, 807 F.2d 1433, 1441 (8th Cir. 1986); *see also* Moore v. City of Las Vegas, 92 Nev. 402, 405, 551 P.2d 244, 246 (1976) ("Only in very rare instances in which *new issues of fact or law* are raised supporting a ruling contrary to the ruling already reached should a motion for rehearing be granted.") (Emphasis added). Judge Breen rested his reconsideration of Judge Handelsman's arbitrability analysis on the basis that it was "clearly erroneous," particularly in light of what he considered to be new clarifying case law.

We conclude that Judge Breen properly determined that Judge Handelsman's decision was "clearly erroneous." We hold that the *Promotion Fund* dispute was not arbitrable as a matter of law.

In September 1965, the MTCA entered into a collective bargaining agreement with the union.[5] That agreement, among other things, established and provided ongoing funding for the Masonry Contractors Industry Promotion Fund ("the promotion fund") and also contained an agreement between the MTCA and the union to submit to binding arbitration any grievance "with respect to the interpretation or application of any provisions of" the collective bargaining agreement. In 1966, the parties entered into a trust agreement pertaining to the promotion fund. The trust agreement contained no provision requiring arbitration.

The promotion fund was to be managed by employer trustees appointed by the MTCA president. By 1975, however, the MTCA had taken over control of all promotion fund decision-making, and the MTCA's contractor members began to administer the promotion fund by majority vote at their monthly MTCA meetings. In 1981, the union filed the *Promotion Fund* suit and made its claim that appellants were improperly administering the trust.

---

[5]The collective bargaining agreement was renegotiated and executed several times up to 1984.

Respondents concede that there is a strong presumption of arbitrability in cases involving employee-employer disputes. Respondents contend, however, that the *Promotion Fund* dispute was one between employees and trustees, not employees and employers. Accordingly, respondents argue that the presumption did not apply.

The key case in this matter is Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364 (1984). In *Schneider,* various employers entered into collective bargaining agreements with a union that required them to participate in two multi-employer employee-benefit trust funds and incorporated the terms of two trust agreements by reference. *Id.* at 368-69. The trust agreements required the employers to contribute to the funds according to the applicable terms of their collective bargaining agreements. *Id.* at 369. The terms of the trust agreements authorized the trustees to initiate "any legal proceedings as the Trustees in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of contributions." *Id.* The trustees filed complaints against the employers in federal court claiming that the employers failed to meet their contribution requirements, and requesting the court to order an accounting and immediate payment of all sums thereby determined to be due. *Id.* at 366. The employers argued that the complaints raised disputed interpretations under the collective bargaining agreements that should have been arbitrated.[6] *Id.* The case reached the United States Supreme Court, which held, *inter alia,* that the presumption of arbitrability applicable to disputes between a union and an employer is not applicable to disputes between trustees and employers:

> *Arbitration promotes labor peace because it requires the parties to forgo the economic weapons of strikes and lockouts. Because the trustees of employee-benefit funds have no recourse to either of those weapons, requiring them to arbitrate disputes with the employer would promote labor peace only indirectly, if at all.* We conclude, therefore, that *the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers,* even if those disputes raise questions of interpretation under the collective-bargaining agreements.

---

[6]The collective bargaining agreements required arbitration of " 'differences . . . between the Company and the Union or any employee of the Company as to the meaning or application of the provisions of this agreement.' " *Schneider,* 466 U.S. at 370 (quoting the agreements). No parties other than the union or the employer were given access to the arbitration process. *Id.*

*Id.* at 372 (footnotes omitted) (emphasis added). The Court went on to hold that, in light of the fact that the agreements at issue and the surrounding circumstances evidenced no intent by the agreeing parties to require arbitration of disputes between the trustees and employers, there was no basis for assuming that the agreeing parties intended to require arbitration of disputes between the trustees and the employers. *Id.* at 372-76.

Although the *Promotion Fund* suit indeed involved employees and employers, the employers were being sued for actions taken in their capacity as trustees of the promotion fund. The critical aspect of the relationship between the parties to the dispute is whether both parties had access to "economic weapons" such as a lockout or a strike. The animating purpose behind presuming arbitration in disputes between parties with access to economic weapons is the preservation of labor peace.

This focus on the parties' potential use of economic weapons is clear in *Schneider,* which involved a neutral trustee without the options of strikes or lockouts. Two federal court cases decided after *Schneider* further illustrate the point. In Communications Workers of America v. Michigan Bell Telephone Co., 820 F.2d 189, 192 (6th Cir. 1987), the court stated that "[t]he critical inquiry under *Schneider Moving & Storage* is whether the parties involved in the dispute have recourse to economic weapons." In Viggiano v. Shenango China Div. of Anchor Hocking Corp., 750 F.2d 276, 281 (3d Cir. 1984), the court stated that "[t]hose critical considerations [in *Schneider*] . . . do not apply where, as here . . . both parties have economic measures available to them." The underlying theme in these cases is that recourse to economic weapons is the critical factor in the analysis.

Following the Schneider reasoning in this case, we begin with the proposition that no presumption of arbitrability should be used when interpreting the trust agreement. Thus, we look at the language of the agreement to determine whether mandatory arbitration was contemplated. The trustees were given broad powers to take legal action—including the authority to commence and defend suits and to settle, compromise, or submit to arbitration any claim or debt. Section 4(3)(i) states as follows:

> The Trustees, to carry out the purposes of this trust, shall exercise the following powers: . . . .
>
> . . . .
>
> (i) Settlement of claims and debts. To settle, compromise, or submit to arbitration any claims, debts, or damages due or owing to or from the Trust, to commence or defend suits or legal or administrative proceedings, and to represent the Trust in all suits and legal and administrative proceedings;

> but such legal matters shall relate only to matters arising subsequent to the date of the Labor contract and shall in no case relate to anything but trust affairs.

This section clearly gives the trustees broad authority to bring or defend legal actions and to elect to submit matters to arbitration if the trustees believe it is in the trust's best interest. This section does not mandate arbitration; on the contrary, it gives the trustees a range of options in handling legal disputes. Therefore, we conclude that the clear intent of the parties as expressed in the trust agreement was that arbitration was an option but was not mandatory.

The Court in Schneider also determined that nothing in the arbitration clauses of the collective bargaining agreements suggested that the employers or the union intended to require arbitration in disputes involving the trustees.

> Even if we assume that the parties to the collective-bargaining agreements could negate by their agreement the powers conferred on the trustees by the broader group of parties to the trust agreements, we find no attempt to do so here. The arbitration clauses found in these collective-bargaining agreements contain no suggestion that either the petitioners or the Union intended to require arbitration of disputes between the trustees and the employers.

466 U.S. at 374. In the case at bar, the arbitration clauses of the collective bargaining agreement evidence no indication that the trustees would be required to arbitrate their disputes. A new collective bargaining agreement was renegotiated after the trust was in place, but the arbitration clause was the same as in the prior collective bargaining agreement and made no reference to mandatory arbitration of disputes arising from the trust agreement. Again, nothing in this new agreement indicates that the parties wanted the trustees to participate in mandatory arbitration before pursuing legal action.

While the individual trustees are associated with some of the employers, their duties and responsibilities under the trust agreement are to receive the contributions to the fund and spend them for designated purposes. The improper spending of trust fund money does not implicate any of the employers, but focuses on whether these individuals discharged their fiduciary duties as trustees.

The trustees do not have access to "economic weapons," and could not have effectively employed such weapons against the union in the *Promotion Fund* suit. The establishment and mainte-

nance of promotion funds are permissible subjects of collective bargaining. *See* McDonald v. Hamilton Elec., Inc. of Florida, 666 F.2d 509, 514 (11th Cir. 1982); N.L.R.B. v. Sheet Metal Workers Int'l Ass'n., 575 F.2d 394, 397 (2d Cir. 1978); Service Art Co., 291 N.L.R.B. 234 (1988). Under the National Labor Relations Act, the parties are precluded from striking or engaging in lockouts over non-mandatory subjects such as industry promotion funds. See N.L.R.B., 575 F.2d at 399. Economic weapons could not be employed in the promotion suit, and therefore should not have any part in this analysis, and that certainly appears to be the conclusion reached in the Schneider case.

In sum, the "presumption of arbitrability" did not apply to the *Promotion Fund* dispute, because neither party to that dispute had access to economic weapons. We conclude that the subject matter giving rise to the *Promotion Fund* dispute was not arbitrable.

In light of our conclusion that the *Promotion Fund* dispute was not arbitrable, we do not need to examine whether the *Promotion Fund* settlement agreement between appellants and the union violated the public policy against assignment of malpractice claims.

Respondents cross-appeal, claiming that the district court erred in denying respondents' request for attorney fees and limiting their recoverable costs. The district court recognized the difficulty in the alliance between the union and the union attorney and the contractors, who were adversaries in the underlying lawsuit, as a result of the contractors' assignment of the malpractice claim to the union. Nevertheless, the court noted that this alliance was created after the lawsuit was brought and that the suit was initially brought in good faith. Moreover, evidence in the record supports the district court's determination that the claims were brought in good faith, particularly the fact that Judge Handelsman granted plaintiffs partial summary judgment on the arbitrability issue.

The district court also found that appellants' rejection of respondents' offer of judgment was not unreasonable in view of Judge Handelsman's earlier decision. We conclude that the district court did not abuse its discretion in denying respondents' request for attorney fees and in limiting their recoverable costs.

Accordingly, we affirm the order of the district court.

ROSE, J., and ZENOFF, Sr. J., concur.[7,8]

---

[7]THE HONORABLE CLIFF YOUNG, Justice, and THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this appeal.

[8]THE HONORABLE DAVID ZENOFF, Senior Justice, was appointed to serve in the place of then-CHIEF JUSTICE THOMAS L. STEFFEN, who voluntarily recused himself from participation in the decision of this appeal.

SPRINGER, J., dissenting:

I dissent for two reasons: first, Judge Breen exceeded his authority by reconsidering and then overruling Judge Handelsman's prior decision; and, second, whether the attorneys were negligent in failing to plead mandatory exhaustion of arbitration remedies as an affirmative defense raises factual issues that should be tried by a jury or other finder of fact.

Judge Breen was the third judge to adjudicate the arbitrability issue. Finding Judge Handelsman's prior decision on the issue of arbitrability to be "clearly erroneous," Judge Breen decided to reverse Judge Handelsman's decision, stating that "nothing prevents a [district] judge from modifying [another district judge's] opinion when it is determined to be clearly in error."

To support his reversal of Judge Handelsman's decision, Judge Breen states:

> The law of the case doctrine directs a court's discretion, but does not limit the tribunal's power. *Arizona v. California,* 460 U.S. 605, 618 (1983). Under the law of the care [sic] doctrine, a court will reconsider a previously decided issue if substantially different evidence is subsequently introduced or the decision is clearly erroneous and would work manifest injustice. *Little Earth of United States Tribes v. Department of Housing,* 807 F.2d 1433, 1441 (9th Cir. 1986).

In State Engineer v. Curtis Park, 101 Nev. 30, 32, 692 P.2d 495, 497 (1985), this court held that

> [t]he doctrine of the law of the case provides that where an appellate court states a principle of law in deciding a case, that rule becomes the law of the case, and is controlling both in the lower court and on subsequent appeals, as long as the facts are substantially the same. Adolino v. State, 99 Nev. 346, 350, 662 P.2d 631 (1983) (citations omitted).

The law of the case doctrine, then, relates to principles of law stated by an appellate court and does not justify the reversal of one trial judge's decision by another trial judge because the second judge believes that the first judge's decision was "clearly erroneous."

After a district court judge has issued a ruling, the parties may move for reconsideration of the decision. If the district court denies the motion for reconsideration, the appropriate action is an appeal to this court. To allow a third or fourth district court judge to consider the issue and alter the result in any given case has the effect of creating an inappropriate intermediate review. Judge Breen exceeded his authority when he decided to reconsider and reverse Judge Handelsman's decision regarding arbitrability.

Appellants filed this legal malpractice action complaining that their attorney breached a duty of care by failing to plead an affirmative defense in a timely manner. As the majority states, whether exhaustion of contractual arbitration remedies would have been a valid defense in the *Promotion Fund*[1] lawsuit is a pure question of law. The district court judges who heard the case carefully analyzed the applicable federal court precedents regarding this close question of law and determined first that the dispute was arbitrable, and then that it was not.

Given the conflicting opinions among the district court judges in this case, the law regarding arbitrability of disputes such as this one is far from being clear and settled. Judge Handelsman did not render his reasoned written decision relating to the presumption of arbitrability under federal labor law in a haphazard or ill-considered manner. Reasonable persons, including three district court judges, have been unable to agree as to whether this dispute was arbitrable. Under these circumstances, whether a prudent defense attorney would have reasonably pleaded mandatory exhaustion of contractual arbitration remedies as an affirmative defense in the *Promotion Fund* case is a matter that should be decided by a jury or other trier of fact. This being the case, summary judgment was inappropriate. I would reverse the judgment of the trial court and remand the matter for trial.

---

[1]Bricklayers & Allied Craftsmen, Local Union No. 3 v. Masonry and Tile Contractors Association of Southern Nevada, No. CV-S-81-726-RDF (D. Nev., filed October 21, 1981) ("the *Promotion Fund* case").