138 Nev., Advance Opinion 55

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY, A FOREIGN CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-BY-MERGER TO LORILLARD TOBACCO COMPANY AND AS SUCCESSOR-IN-INTEREST TO THE UNITED STATES TOBACCO BUSINESS OF BROWN & WILLIAMSON TOBACCO CORPORATION, WHICH IS THE SUCCESSOR-BY-MERGER TO THE AMERICAN TOBACCO COMPANY, Petitioner, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE NADIA KRALL, DISTRICT JUDGE, Respondents, and SANDRA CAMACHO, INDIVIDUALLY; ANTHONY CAMACHO, INDIVIDUALLY; PHILIP MORRIS USA, INC., A FOREIGN CORPORATION; LIGGETT GROUP, LLC, A FOREIGN CORPORATION; AND ASM NATIONWIDE CORPORATION, D/B/A SILVERADO SMOKES & CIGARS, A DOMESTIC CORPORATION, Real Parties in Interest. | No. 83724 FILED JUL 28 2022 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Original petition for a writ of mandamus challenging a district court order granting reconsideration of a prior order dismissing a party in a civil action.

22- 23674

*Petition denied.*

Bailey Kennedy and Dennis L. Kennedy, Joseph A. Liebman, and Rebecca L. Crooker, Las Vegas; King & Spalding LLP and Val Leppert, Atlanta, Georgia; King & Spalding LLP and Ursula Marie Henninger, Charlotte, North Carolina,
for Petitioner.

Claggett & Sykes Law Firm and Sean K. Claggett, Matthew S. Granda, and Micah S. Echols, Las Vegas; Kelley Uustal and Kimberly L. Wald, Michael A. Hersh, and Fan Li, Fort Lauderdale, Florida,
for Real Parties in Interest Sandra Camacho and Anthony Camacho.

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, J. Christopher Jorgensen, and Abraham G. Smith, Las Vegas,
for Real Party in Interest Liggett Group, LLC.

Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, and D. Lee Roberts, Jr., Las Vegas,
for Real Parties in Interest Philip Morris USA, Inc., and ASM Nationwide Corporation.

---

BEFORE THE SUPREME COURT, SILVER, CADISH, and PICKERING, JJ.

*OPINION*

By the Court, CADISH, J.:

Petitioner challenges a district court order reinstating a deceptive trade practices complaint, arguing that real parties in interest/plaintiffs lack standing to bring that claim against petitioner because they never used petitioner's products and thus cannot show that they are victims of consumer fraud who sustained damages from petitioner's



allegedly deceptive trade practices under NRS 41.600(1). As NRS 41.600 creates a cause of action for victims of consumer fraud, which includes deceptive trade practices under the Nevada Deceptive Trade Practices Act (NDTPA), and nothing in the NDTPA limits consumer fraud victims to only those who used a manufacturer's product, we conclude that the district court correctly granted reconsideration and reinstated the complaint, as its prior order granting petitioner's motion to dismiss rested on an overly narrow interpretation of NRS 41.600(1). We further conclude that plaintiffs pleaded sufficient facts, including that they were directly harmed by petitioner's false and misleading advertising, to bring an NDTPA claim against petitioner. Thus, mandamus relief is not warranted, and we deny the petition.

## FACTS AND PROCEDURAL HISTORY

Real party in interest Sandra Camacho began smoking cigarettes in 1964 and continued to smoke until 2017. She smoked L&M cigarettes, which were manufactured by real party in interest Liggett Group, LLC, and Marlboro and Basic cigarettes, which were manufactured by real party in interest Philip Morris USA, Inc. Sandra concedes that she did not purchase or use any of petitioner R.J. Reynolds Tobacco Company's products. In March 2018, Sandra was diagnosed with laryngeal cancer caused by her cigarette use. Sandra and her husband, real party in interest Anthony Camacho, filed suit against Liggett, Philip Morris, and Reynolds. The Camachos raised several claims, including fraud and products-liability-based claims against Philip Morris and Liggett, and a civil conspiracy claim against all three cigarette manufacturers alleging that they "acted in concert to accomplish an unlawful objective for the purposes of harming . . . Sandra," namely by concealing, omitting, or otherwise misrepresenting the health hazards of cigarettes in various public

(O) 1947A

statements and marketing materials. The Camachos also asserted a claim for violating the NDTPA, alleging that Reynolds and the other defendants knowingly made false representations in their advertisements.

Reynolds filed a motion to dismiss the two claims against it. It argued that although the Camachos labeled their claims as a violation of the NDTPA and civil conspiracy, the claims were effectively products-liability claims. Reynolds asserted that those claims failed as a matter of law because product use "is a fundamental requirement" of a products-liability claim, and Sandra did not use a Reynolds product. Similarly, Reynolds contended that the Camachos' NDTPA claim failed, as there was "no connection between Reynolds' alleged deceptive trade practices as they relate to the health risk of its particular products and [Sandra's] alleged laryngeal cancer" because Sandra never used a Reynolds product.

The Camachos opposed the motion to dismiss, arguing that under Nevada law neither a civil conspiracy claim nor a deceptive trade-practice claim includes a product-use requirement. They contended that the cases Reynolds relied on in support of a product-use requirement involved claims for negligence, strict products liability, or fraud, as opposed to an NDTPA- or civil-conspiracy-based theory of liability. Regarding the NDTPA claim specifically, the Camachos asserted that they adequately pleaded causation, as they alleged that but for cigarette manufacturers engaging in "concerted actions" to misrepresent the health risks of smoking, Sandra would not have continued to smoke cigarettes. The district court granted Reynolds' motion to dismiss, concluding that Sandra was not a consumer fraud victim under NRS 41.600(1) because she did not use a Reynolds product.

The Camachos filed a motion for reconsideration, asserting that a deceptive trade practice under the NDTPA includes a business's knowingly false representation regarding the product for sale and that a sale under the NDTPA includes an attempt to sell. Because a sale includes an attempt to sell, and an attempt to sell implies a failure to sell, the Camachos argued that the district court clearly erred by reading a product-use requirement into the NDTPA. Because NRS 41.600(1) confers standing on victims of consumer fraud, which includes victims of deceptive trade practices as defined by the NDTPA, the Camachos asserted they pleaded viable claims against Reynolds, even though Sandra never used a Reynolds product.

The district court granted reconsideration over Reynolds' opposition, concluding that the earlier dismissal order was clearly erroneous because it added an atextual product-use requirement or legal-relationship requirement into the NDTPA. It also pointed to Nevada precedent stating "that an NDTPA claim is easier to establish than common law fraud." Because the court reinstated the NDTPA claim, it reinstated the derivative civil conspiracy claim. Reynolds now seeks mandamus relief directing the district court to vacate its order granting reconsideration and to reinstate the dismissal order.[1]

## DISCUSSION

"The decision to entertain a petition for a writ of mandamus is within our sole discretion." *Canarelli v. Eighth Judicial Dist. Court*, 138 Nev., Adv. Op. 12, 506 P.3d 334, 337 (2022). While we may issue mandamus

---

[1]Although labeled petition for writ of mandamus or prohibition, Reynolds' petition does not contain argument as to or actually seek a writ of prohibition.

"to compel an act that the law requires" or to correct a lower court's "'clear and indisputable' legal error," *Archon Corp. v. Eighth Judicial Dist. Court*, 133 Nev. 816, 819-20, 407 P.3d 702, 706 (2017) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953)), writ relief is not appropriate where there is a "plain, speedy, and adequate remedy in the ordinary course of law," NRS 34.170, such as the right to appeal from a final judgment, *Archon Corp.*, 133 Nev. at 820, 407 P.3d at 706. However, even if traditional mandamus is not appropriate, we may issue advisory mandamus "when the issue presented is novel, of great public importance, and likely to recur." *Archon Corp.*, 133 Nev. at 822, 407 P.3d at 708 (quoting *United States v. Horn*, 29 F.3d 754, 769 (1st Cir. 1994)). It should only issue where the legal question presented is "likely of significant repetition prior to effective review." *Id.* at 822-23, 407 P.3d at 708 (quoting *In re Bushkin Assocs., Inc.*, 864 F.2d 241, 247 (1st Cir. 1989)).

Although traditional mandamus is inappropriate because, in granting reconsideration, the district court essentially denied Reynolds' NRCP 12(b)(5) motion to dismiss, and Reynolds can appeal from any adverse final trial decision, *see Smith v. Eighth Judicial Dist. Court*, 113 Nev. 1343, 1344-45, 950 P.2d 280, 281 (1997) (observing that this court generally will not consider writ petitions challenging orders denying motions to dismiss), we exercise our discretion to entertain this petition because the issue of whether a nonuser of a product may qualify as a victim with standing to bring an NDTPA suit against a product manufacturer presents a novel legal question of statewide importance requiring clarification. Moreover, this issue in this matter implicates substantial public-policy concerns regarding the scope of liability for deceptive trade practices, and "[o]ur intervention is further warranted because district

courts are reaching different conclusions on this very issue." *Lyft, Inc. v. Eighth Judicial Dist. Court*, 137 Nev., Adv. Op. 86, 501 P.3d 994, 998 (2021).

*The district court did not manifestly abuse its discretion in granting the Camachos' motion for reconsideration*

While we ordinarily review a district court's decision to grant or deny a motion for reconsideration for an abuse of discretion, *see AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010), we may only grant writ relief if the district court *manifestly* abused its discretion, *Round Hill Gen. Improv. Dist. v. Newman*, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981). The district court "may reconsider a previously decided issue if . . . the decision is clearly erroneous." *Masonry & Tile Contractors Ass'n of S. Nev. v. Jolley, Urga & Wirth, Ltd.*, 113 Nev. 737, 741, 941 P.2d 486, 489 (1997).

As it did in district court, Reynolds contends that not only did the Camachos fail to show that the dismissal order was clearly erroneous, but also the dismissal order correctly applied the law.[2] It asserts that the Camachos are not victims under NRS 41.600(1) because Sandra did not use a Reynolds product and, thus, cannot show any direct harm from Reynolds' allegedly deceptive trade practices. Moreover, Reynolds argues that the Camachos' attempted sale argument "misses the mark" because the

---

[2]Reynolds also argues that the Camachos' motion for reconsideration was untimely filed in violation of EDCR 2.24(b) (providing that a party seeking reconsideration "must file a motion for such relief within 14 days after service of written notice of the order or judgment"). However, EDCR 2.24(b) allows the district court to enlarge the time to file a motion for reconsideration. Here, the district court acknowledged Reynolds' timeliness argument but concluded that it nonetheless retained the authority to reconsider its prior decision under NRCP 54(b). Thus, we conclude that the district court's order implicitly enlarged the time to file a motion for reconsideration under EDCR 2.24.

Camachos failed to show how a person can be a victim of deceptive trade practices if the defendant attempted, but ultimately failed, to sell the product to the person. Alternatively, Reynolds contends that even if an individual can be victimized by deceptive trade practices in ways other than buying or using the product, the individual must show that he or she was directly harmed, which the Camachos cannot do here. For the reasons discussed below, we disagree.

We review questions of statutory interpretation de novo, "even in the context of a writ petition." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 198, 179 P.3d 556, 559 (2008). When interpreting a statute, we look to the statute's plain language. *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 370, 252 P.3d 206, 209 (2011). "If a statute's language is plain and unambiguous, we enforce the statute as written, without resorting to the rules of construction." *Smith v. Zilverberg*, 137 Nev. 65, 72, 481 P.3d 1222, 1230 (2021).

Under NRS 41.600(1), "any person who is a victim of consumer fraud" may bring an action against the alleged perpetrator. Consumer fraud includes "[a] deceptive trade practice" as defined by the NDTPA. NRS 41.600(2)(e). As relevant here, a deceptive trade practice occurs when a business operator "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services *for sale* or lease." NRS 598.0915(5) (emphasis added). "'Sale' includes any sale, offer for sale or *attempt to sell* any property for any consideration." NRS 598.094 (emphasis added).

The scope of the word "victim" under NRS 41.600(1) has been disputed in other contexts, with courts consistently concluding that "a 'victim of consumer fraud' need not be a 'consumer' of the defendant's goods

or services." *See Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1152 (9th Cir. 2011). As the statute does not limit victims to consumers, a Nevada federal district court interpreting NRS 41.600(1) concluded that a business competitor may be a victim if it can show that it was "directly harmed" by the alleged consumer fraud. *S. Serv. Corp. v. Excel Bldg. Servs., Inc.*, 617 F. Supp. 2d 1097, 1099, 1100 (D. Nev. 2007); *see also Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1145 (D. Nev. 2019) ("[C]ourts have found standing under NRS 41.600 beyond just 'business competitors' of a defendant or 'consumers' of a defendant's goods or services.").

The Ninth Circuit Court of Appeals' decision in *Del Webb Communities, Inc.*, is instructive on the scope of victims protected by the NDTPA. There, defendant Mojave Construction inspected several homes in a Del Webb retirement community for purposes of construction-defect claims, despite lacking the proper license. 652 F.3d at 1147, 1149. It also misrepresented its relationship with Del Webb. *Id.* at 1148. Del Webb sued Mojave, alleging that its actions violated the NDTPA and harmed Del Webb's relationship with consumers and its reputation. *Id.* at 1149. The district court agreed and issued a permanent injunction prohibiting Mojave from soliciting and/or performing residential inspections for any Del Webb developments. *Id.* Mojave appealed, contending that Del Webb lacked standing under NRS 41.600(1) because it was neither a business competitor of Mojave nor a consumer of Mojave's services. *Id.* at 1152. The court of appeals affirmed on the standing issue, recognizing that the statute "allows 'any person' who is a 'victim of consumer fraud'" to sue, *id.* (quoting NRS 41.600(1)), and explaining that "[t]he word 'consumer' modifies 'fraud,' but does not limit 'any person' or 'victim,'" *id.* Thus, the court concluded that "[t]here is no basis in the text of NRS 41.600 [or caselaw interpreting it] to

Supreme Court
of
Nevada

(O) 1947A

9

limit standing to a group broader than consumers but no broader than business competitors." *Id.* at 1153. Instead, the court held that standing depended on "whether Mojave's business practices 'directly harmed' Del Webb," and because the district court's findings on direct injury to Del Webb were uncontested, it correctly concluded that Del Webb had standing to sue for deceptive trade practices. *Id.*

We agree with *Del Webb Communities, Inc.*'s analysis of NRS 41.600(1) and conclude that the district court in this matter properly rejected Reynolds' narrow reading of the scope of plaintiffs who may qualify as consumer fraud victims under the NDTPA. In fact, to read "victim" to mean only a person who used the product would needlessly narrow the remedial reach of the NDTPA, *see Poole v. Nev. Auto Dealership Invs., LLC*, 135 Nev. 280, 286-87, 449 P.3d 479, 485 (Ct. App. 2019) ("[T]he NDTPA is a remedial statutory scheme."), which is contrary to the liberal construction that applies to such statutes, *see Welfare Div. of State Dep't of Health, Welfare & Rehab. v. Washoe Cty. Welfare Dep't*, 88 Nev. 635, 637, 503 P.2d 457, 458 (1972) (recognizing that a statute that is "remedial in nature . . . should be afforded liberal construction to accomplish its beneficial intent").

Turning to the case at hand, we further conclude that the plain language of the NDTPA contemplates situations in which liability may be found even when, like here, an individual did not actually purchase or use the product. Specifically, NRS 598.0915(5) provides that an individual is liable for consumer fraud if he or she "[k]nowingly makes a false representation" as to the product "for sale." As already noted, "sale" includes an "attempt to sell" the product or service. *See* NRS 598.094. An "attempt to sell" contemplates a failure to sell the product, and thus,

individuals violate the NDTPA when they make a knowingly false representation regarding the product in an attempt to sell the product and the claimant suffered a direct harm from the attempted sale, regardless of whether the claimant purchased the at-issue product. *See S. Serv.*, 617 F. Supp. 2d at 1100; *see also Fairway Chevrolet Co. v. Kelley*, No. 72444, 2018 WL 5906906, at *1 (Nev. Nov. 9, 2018) (observing that the definition of "'victim' connotes some sort of harm being inflicted on the 'victim'"). Here, while Sandra did not use any Reynolds products, she pleaded that Reynolds violated the NDTPA by making "false and misleading statements" that denied cigarettes are addictive, claimed "it was not known whether cigarettes were harmful or caused disease," advertised various types of cigarettes as either safe, "low tar," or "low nicotine," and made several other knowingly false statements regarding the potential health risks of cigarettes. The Camachos also alleged that they were directly harmed because Sandra relied on those representations to smoke generally, even though she did not smoke Reynolds products, which resulted in her cancer. Thus, the district court did not manifestly abuse its discretion when it granted reconsideration of its order dismissing Reynolds, as the dismissal order was clearly erroneous in imposing a product-use requirement on NDTPA claims in contradiction to the plain language of NRS 41.600(1), NRS 598.0915(5), and NRS 598.094.[3]

---

[3]Our conclusion is consistent with our decision in *Leigh-Pink v. Rio Properties, LLC*, 138 Nev., Adv. Op. 48, 512 P.3d 322 (2022). There, we concluded that individuals who "assert only economic injur[ies]" but "received the true value of their goods or services" cannot bring a claim for a violation of the NDTPA. *Id.* at 327-28. Here, the crux of the Camachos' NDTPA claim is that the tobacco companies made several knowing misrepresentations regarding "the characteristics, ingredients, uses,

SUPREME COURT
OF
NEVADA

(O) 1947A

This interpretation of consumer fraud victim, while broader than Reynolds would prefer, is consistent with earlier Nevada decisions liberally construing claims brought under the NDTPA and refusing to "read in" requirements for suing under the NDTPA. *See, e.g., Betsinger v. D.R. Horton, Inc.*, 126 Nev. 162, 165-66, 232 P.3d 433, 435-36 (2010) (recognizing that while the NDTPA "sound[s] in fraud, which, under the common law, must be proven by clear and convincing evidence," we "cannot conclude that deceptive trade practices claims are subject to a higher burden of proof" because "[s]tatutory offenses that sound in fraud are separate and distinct from common law fraud" (citations omitted)); *Poole*, 135 Nev. at 284, 286-87, 449 P.3d at 483-85 (concluding that "knowingly" under the NDTPA means "that the defendant is aware that the facts exist that constitute the act or omission," not that "the defendant intend[ed] to deceive" the victim, because the former interpretation better serves the NDTPA's "remedial purpose" while the latter interpretation imposes a higher standard for proving an NDTPA violation and makes the NDTPA redundant with common law fraud). Such an interpretation is also consistent with how other states apply analogous consumer fraud protection and deceptive trade practices acts. For example, in rejecting a standing argument in a consumer

---

benefits, alterations or quantities" of their tobacco products in violation of NRS 598.0915. Thus, Sandra did not receive the "true value" of the tobacco products she purchased because the tobacco companies misled her regarding the "true value" of those products. *See id.* (holding that the plaintiffs had not been injured for NDTPA purposes by the defendant's failure to inform the plaintiffs of the potential for exposure to Legionnaires' disease because they did not contract the disease and the *legionella* bacteria did not prevent the plaintiffs from using all of the defendant's amenities, and thus, the plaintiffs received the true value of the defendant's services as marketed).

protection action, the Washington Supreme Court reasoned that, "[a]lthough the consumer protection statutes of some states require that the injured person be the same person who purchased goods or services, there is no language in the Washington act which requires that a [Consumer Protection Act] plaintiff be the consumer of goods or services."[4] *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1061 (Wash. 1993); *see also Maillet v. ATF-Davidson Co.*, 552 N.E.2d 95, 98-99 (Mass. 1990) (rejecting the defendant's argument that Massachusetts's consumer protection statute was limited to consumers in privity with the defendant because the statute provides a cause of action for "[a]ny person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful" (internal quotation marks omitted)).

Reynolds' contrary arguments are not persuasive. First, our conclusion does not "undermine" the Legislature's statutory scheme, as the interpretation merely gives the statutory scheme's plain language its natural meaning. *See Platte River Ins. Co. v. Jackson*, 137 Nev., Adv. Op. 82, 500 P.3d 1257, 1262 (2021) ("[W]e may not adopt an interpretation contrary to a statute's plain meaning merely because we 'disagree[ ] with the wisdom of' the Legislature's policy determinations." (second alteration

---

[4]The Washington Consumer Protection Act (CPA) provides that "[a]ny person who is injured in his or her business or property by a violation of RCW 19.86.020 . . . may bring a civil action . . . to recover the actual damages sustained by him or her . . . ." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1060-61 (Wash. 1993) (emphasis omitted) (quoting Wash. Rev. Code § 19.86.090). Washington courts have defined the elements of a private CPA claim as: "(1) an unfair or deceptive act or practice; (2) which occurs in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the plaintiff in his or her business or property; and (5) which injury is causally linked to the unfair or deceptive act." *Id.* at 1061.

in original) (quoting *Anthony v. State*, 94 Nev. 338, 341, 580 P.2d 939, 941 (1978))).

Second, the plain language of the pertinent statutes contemplates imposing liability even if a plaintiff did not use the manufacturer's product so long as the plaintiff can still show a direct harm arising from the manufacturer's deceptive trade practices. *See* NRS 598.094.[5] Moreover, contrary to Reynolds' assertion, the Camachos pleaded sufficient facts of a direct harm, as they contended that Sandra would not have smoked cigarettes and developed cancer but for all defendants'—including Reynolds'—deceptive trade practices. *See Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008) (explaining that dismissal of a complaint is proper only where "it appears beyond a doubt that [appellant] could prove no set of facts, which, if true, would entitle [appellant] to relief").

Third, Reynolds' claim that the Camachos are asserting a strict products-liability claim, which precludes liability for nonuse of a product, is unpersuasive. The Camachos asserted a strict products-liability claim against Philip Morris and Liggett, the parties who manufactured the tobacco products that Sandra used. But while the claims against Reynolds

---

[5]Reynolds also argues that this court should not consider NRS 598.094 because NRS 41.600(2)(e) references only NRS 598.0915 to 598.0925. While Reynolds is correct that NRS 41.600(2)(e) does not directly reference NRS 598.094, Reynolds ignores that NRS 598.094 defines "sale" as used in the NDTPA, including NRS 598.0915. *See* NRS 598.0903. Thus, it is appropriate to use NRS 598.094 to define "sale" under NRS 598.0915. *See S. Nev. Homebuilders Ass'n v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) (explaining that when "interpret[ing] provisions within a common statutory scheme," we must read them in harmony and in accordance with the overall purpose of the statutes).

acknowledge the harm caused by smoking, those claims are based on Reynolds' alleged knowing misrepresentation of the dangers of smoking, which is distinct from a products-liability claim, despite relying on similar facts. *Compare* NRS 598.0915 (explaining that a deceptive trade practice occurs when a person engaged in the course of his or her business "knowingly" engages in several enumerated false advertising behaviors), *with Fyssakis v. Knight Equip. Corp.*, 108 Nev. 212, 214, 826 P.2d 570, 571 (1992) (explaining that a strict products-liability claim exists when the plaintiff alleges (1) "the product had a defect which rendered it unreasonably dangerous," (2) "the defect existed at the time the product left the manufacturer," and (3) "the defect caused the plaintiff's injury").

Fourth, the fact that the Camachos raised the attempted sale argument for the first time in their motion for reconsideration does not mean that they waived the argument. *See Masonry & Tile Contractors Ass'n of S. Nev.*, 113 Nev. at 741, 941 P.2d at 489 (providing that "[a] district court may reconsider a previously decided issue if substantially different evidence is subsequently introduced *or* the decision is clearly erroneous" (emphasis added)). Rather, a party may assert new legal arguments in a motion for reconsideration, and this court will consider such arguments so long as (1) "the reconsideration motion and order are part of the record on appeal" and (2) the district court "entertained the [reconsideration] motion on its merits." *Cohen v. Padda*, 138 Nev., Adv. Op. 18, 507 P.3d 187, 190 (2022). Moreover, a court may grant reconsideration when the challenged decision is "clearly erroneous," regardless of whether new evidence exists. *See Masonry & Tile Contractors Ass'n of S. Nev.*, 113 Nev. at 741, 941 P.2d at 489. Finally, because the court correctly reinstated the NDTPA claim, it properly revived the civil conspiracy claim, as that claim is derivative of the

NDTPA claim. *See Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 219, 984 P.2d 164, 168 (1999) (affirming the dismissal of a civil conspiracy claim when the underlying cause of action was barred by the fair report privilege). Accordingly, we conclude that the district court did not manifestly abuse its discretion when it granted reconsideration of its order dismissing the claims against Reynolds.[6]

## CONCLUSION

Under NRS 41.600(1), a "victim" is any person who can show he or she was directly harmed by consumer fraud. There is no product-use requirement—a "victim" can be a consumer, a business competitor, or as applicable here, "any person" who suffered harm from the defendant's consumer fraud. While Sandra did not use Reynolds' product, she pleaded that she would not have smoked tobacco and, consequently, would not have suffered cancer, but for the deceptive trade practices engaged in by Reynolds and the other tobacco companies. Such an allegation is sufficient,

---

[6]To the extent Reynolds argues that the district court did not rely on the Camachos' attempted-sale argument in granting reconsideration, that argument is not persuasive. First, the district court implicitly relied on the attempted-sale argument when it concluded that the dismissal order "erroneously add[ed]" several atextual requirements into the NDTPA. Second, even if the order did not address the Camachos' statutory-interpretation argument, the Camachos raised it in their motion for reconsideration, and the Camachos "may defend the judgment in [their] favor with any argument that is supported by the record." *Univ. of Nev. v. Tarkanian*, 110 Nev. 581, 603, 879 P.2d 1180, 1194 (1994) (internal quotation marks omitted). Moreover, we "will affirm a district court's order if the district court reached the correct result, even if for the wrong reason." *Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010).

at the motion to dismiss stage, for the Camachos to proceed on their claim against Reynolds under NRS 41.600(1) for an NDTPA violation, as they alleged a direct harm from Reynolds' allegedly deceptive trade practices. Accordingly, we deny Reynolds' petition for writ relief.

_____, J.
Cadish

I concur:

_____, J.
Silver

 

PICKERING, J., concurring in result only:

I agree that we should deny the petition. The district court's order granting reconsideration and denying Reynolds' motion to dismiss did not involve clear legal error; the right of appeal from any adverse final judgment affords Reynolds an adequate legal remedy; and this case does not present an important legal question dividing courts statewide that will evade review if not resolved via writ petition. This case thus does not qualify for extraordinary writ relief.

I would decide the writ on that basis, without deciding the motion to dismiss on the merits. Our caselaw strongly counsels against allowing mandamus to erode the final judgment rule by too readily giving merits-based writ review to orders denying motions to dismiss or for summary judgment. *See Archon Corp. v. Eighth Judicial Dist. Court*, 133 Nev. 816, 824, 407 P.3d 702, 709 (2017) (declining merits review of a mandamus petition contesting an order denying a motion to dismiss, noting how "disruptive" mandamus is in this context and that "[a] request for mandamus following the denial of a motion to dismiss presents many of the inefficiencies that adherence to the final judgment rule seeks to prevent— an increased [appellate] caseload, piecemeal litigation, needless delay, and confusing litigation over this court's jurisdiction"); *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) (stating that "because an appeal from the final judgment typically constitutes an adequate and speedy legal remedy, we generally decline to consider writ petitions that challenge interlocutory district court orders denying motions to dismiss"); *State, Dep't of Transp. v. Thompson*, 99 Nev. 358, 362, 662 P.2d 1338, 1340 (1983) (stating general rule against granting merits review of writ petitions contesting orders denying motions to dismiss

and for summary judgment because such petitions "have generally been quite disruptive to the orderly processing of civil cases in the district courts, and have been a constant source of unnecessary expense for litigants"). That counsel carries special force here, because the proceedings in district court have progressed well beyond the motion-to-dismiss stage, and trial starts next month.[1] The legal issues the majority reaches out to resolve will be reviewable on direct appeal from the final judgment entered after trial, and we will have the benefit of a fully developed legal and factual record. While I join the judgment denying the writ, I do so solely on the basis the petition does not qualify for writ relief. I do not join and otherwise dissent from the majority's opinion affirming the denial of petitioner's NRCP 12(b)(5) motion to dismiss.

"[M]andamus is an extraordinary remedy, reserved for extraordinary causes." *Archon*, 133 Nev. at 819, 407 P.3d at 706. As petitioner, Reynolds bears the burden of showing it qualifies for extraordinary writ relief. *Id.* at 821, 407 P.3d at 707; *see Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381 (2004) (holding that, to obtain extraordinary writ relief, "the petitioner must satisfy the burden of showing that [its] right to issuance of the writ is clear and indisputable") (internal quotations omitted). Whether to grant extraordinary relief is entrusted to this court's discretion. *State, Dep't of Transp.*, 99 Nev. at 360 & n.2, 662 P.2d at 1339 & n.2. But that discretion is not untrammeled. Consistent with the goal of not allowing writs to subvert the final judgment rule, courts have developed

---

[1]The reconsideration process delayed the filing of Reynolds' writ petition. The Camachos filed an earlier petition that they withdrew after the district court granted reconsideration.

guidelines for deciding writ petitions, which the Ninth Circuit synthesized in *Bauman v. United States District Court* as follows:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.) (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the [applicable court] rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

557 F.2d 650, 654-55 (1977) (citations omitted); *see* 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3933, at 638-39 (3d ed. 2012) (reprinting the *Bauman* guidelines and describing them as "[p]erhaps the most influential set of contemporary guidelines for exercising writ authority"); *Archon*, 133 Nev. at 824, 407 P.3d at 824 (citing *Bauman* with approval in denying writ review of an order denying a motion to dismiss). As *Bauman* recognizes, the guidelines are intended to be helpful, not to establish bright-line rules—"rarely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable." 557 F.2d at 655.

Reynolds argues for both traditional and advisory mandamus. Taking traditional mandamus first, Nevada law requires the petitioner at minimum to meet the criteria stated in the first and third *Bauman* guidelines to qualify for such writ relief. NRS 34.160 (providing for mandamus to compel the performance of an act the law requires "as a duty resulting from an office, trust or station"); NRS 34.170 (providing for

mandamus to issue in cases "where there is not a plain, speedy and adequate remedy in the ordinary course of law"); *see Archon*, 133 Nev. at 819-20, 407 P.3d at 706 (discussing the requirements for traditional mandamus). As the majority correctly holds, Reynolds' petition fails to meet these threshold criteria for traditional mandamus.

The errors Reynolds asserts—the district judge's decisions, first, to reconsider her predecessor's dismissal order and, second, to deny the motion to dismiss—do not involve the kind of "clear and indisputable" legal error that mandamus protects against. *Archon*, 133 Nev. at 820, 407 P.3d at 706 (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953)). Although district judges hesitate to reconsider prior interlocutory rulings in a case, especially by a predecessor judge, the rules limiting the practice do not forbid it outright, instead leaving it to the successor judge's discretion and the particular reasons shown. *See* John A. Glenn, *Propriety of Federal District Judge's Overruling or Reconsidering Decision or Order Previously Made in Same Case by Another District Judge*, 20 A.L.R. Fed. 13 § 5(c) (1974). Traditional mandamus does not lie to correct a claimed abuse of discretion; more must be shown. *Walker v. Second Judicial Dist. Court*, 136 Nev. 678, 680, 476 P.3d 1194, 1197 (2020) (holding that "traditional mandamus relief does not lie where a discretionary lower court decision 'result[s] from a mere error in judgment'; instead, mandamus is available only where 'the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill will'") (alteration in original) (quoting *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 932, 267 P.3d 777, 780 (2011)). Nor did the district court commit clear error in denying the motion to dismiss. Whether the NDTPA affords the Camachos a right of action against

Reynolds despite that Mrs. Camacho never bought or smoked a cigarette that Reynolds manufactured or sold presents a close, open, and to some extent fact-dependent question of Nevada law. With no binding precedent one way or the other, clear error does not appear. *See In re Van Dusen*, 654 F.3d 838, 845 (9th Cir. 2011) ("The absence of controlling precedent weighs strongly against a finding of clear error.").

Reynolds likewise fails to establish that it lacks other adequate means to attain the relief it seeks, or that it will be damaged or prejudiced in a way not correctable on appeal unless granted extraordinary writ relief. Reynolds acknowledges that it can appeal any judgment entered against it and raise on appeal the issues its petition asks us to decide now. "[T]he right to appeal is generally an adequate legal remedy that precludes writ relief." *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 224, 88 P.3d 840, 841 (2004); *accord Archon*, 133 Nev. at 820, 407 P.3d at 706. Not only does an eventual appeal afford adequate review, but the record developed en route to final judgment makes that review superior, since it affords this court "the advantage of having the whole case before us," with judicially determined facts and fully vetted law, before weighing in. *Walker*, 136 Nev. at 681, 476 P.3d at 1197 (internal quotations omitted). Reynolds complains that it will incur "significant expense in defending this lawsuit and going through a multi-week trial" if writ relief does not issue. But this occurs in every case a motion to dismiss or for summary judgment is denied and does not make direct appeal an inadequate legal remedy. For an appeal to be an inadequate remedy, "there must be some obstacle to relief beyond litigation costs that renders obtaining relief not just expensive but effectively unobtainable," *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 353 (5th Cir. 2017) (internal quotations omitted), which Reynolds has not shown.

In sum, this petition fails to meet *Bauman*'s first (appeal is an adequate legal remedy), second (prejudice not correctable on appeal), and third (clear legal error) guidelines. This defeats traditional mandamus. *See Walker*, 136 Nev. at 683, 476 P.3d at 1198. The fourth *Bauman* guideline—does the district court's order involve "an oft-repeated error, or manifest[ ] a persistent disregard of the [applicable court] rules," 557 F.2d at 655—is not argued by either side as applicable. This leaves the fifth *Bauman* guideline ("[t]he district court's order raises new and important problems, or issues of law of first impression," *id.*), which is more appropriately discussed in evaluating advisory mandamus.

The *Bauman* guidelines apply to advisory mandamus, much as they do to traditional mandamus, but with different priorities. *See* 16 Charles Alan Wright, *et al.*, *supra*, § 3934.1, at 679-83; *Archon*, 133 Nev. at 822-23, 407 P.3d at 708-09; *D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 125 Nev. 449, 453-54, 215 P.3d 697, 700 (2009). The fifth *Bauman* guideline—the importance of the issue the petition presents—plays a greater role in advisory than traditional mandamus. Courts differ in their descriptions of how "important" an issue must be to qualify for advisory mandamus. *Compare United States v. Horn*, 29 F.3d 754, 770 (1st Cir. 1994) (explaining that "advisory mandamus is reserved for big game"), *and In re Bushkin Assocs., Inc.*, 864 F.2d 241, 247 (1st Cir. 1989) (questions warranting advisory mandamus are "hen's-teeth rare" and should be "blockbuster[s]"), *with In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 307 (6th Cir. 1984) (finding an issue of first impression sufficiently important because "the sheer magnitude of the case makes the disposition of these issues crucial as several hundred litigants are waiting for a decision before proceeding with their cases"), *and Int'l Game Tech.*, 124 Nev. at 197-98, 179

P.3d at 559 (entertaining a petition for extraordinary writ relief that, despite not qualifying for traditional mandamus, "raises an important legal issue in need of clarification, involving public policy, of which this court's review would promote sound judicial economy and administration"). In general, for advisory mandamus to issue, the petition should present issues that are important, that are dividing the district courts, and that will evade review by other means. 16 Charles Alan Wright, *et al.*, *supra*, § 3934.1, at 681-82; (stating that, for advisory mandamus, the petition must present issues that are "new, important, and likely to evade review by other means"); *see Archon*, 133 Nev. at 822-23, 407 P.3d at 708; *Shoen v. State Bar of Nev.*, 136 Nev. 258, 260, 464 P.3d 402, 404 (2020). Nevada cases also consider whether granting the writ will promote "sound judicial economy and administration." *Int'l Game Tech.*, 124 Nev. at 197-98, 179 P.3d at 559.

The NDTPA issue that Reynolds' writ petition presents does not qualify for advisory mandamus. As discussed above, the petition does not meet any of the first four *Bauman* guidelines, leaving only the fifth. The issue Reynolds raises is doubtless important to the parties. But the majority is incorrect and overstates matters considerably when it says that district courts across the state are "reaching different conclusions on [the] very issue" presented here. Majority op. at 6-7 (quoting *Lyft, Inc. v. Eighth Judicial Dist. Court*, 137 Nev., Adv. Op. 86, 501 P.3d 994, 998 (2021)). Not counting the district court case underlying this petition, the record supports that there are just three pending cases that present the NDTPA issue Reynolds raises. All are individual plaintiff cases filed by the same law firm in Clark County—*and in each, the district judge has denied the motion to dismiss filed by the Reynolds-counterpart defendant. Rowan v. Philip Morris USA, Inc.*, No. A-20-811091-C (Eighth Jud. Dist. Ct. Apr. 19, 2022)

(Order Granting Reconsideration and Denying Motion to Dismiss);[2] *Speed v. Philip Morris USA, Inc.*, No. A-20-819040-C (Eighth Jud. Dist. Ct. Mar. 23, 2021) (Order Denying Motion to Dismiss); *Tully v. Philip Morris USA, Inc.*, No. A-19-807657-C (Eighth Jud. Dist. Ct. July 8, 2020) (Order Denying Motion to Dismiss). The issue is not one dividing district courts across Nevada; it is limited to the parties in three cases besides this one, all venued in Clark County. That the issue only arises now, after the NDTPA has been on the books for nearly half a century, further undercuts its claimed pervasiveness.

Nor will the issue evade review if advisory mandamus does not issue. As noted, trial in this case starts next month. If Reynolds loses, it can directly appeal. This court will then have before it a fully developed legal and factual record on which to decide the issues involved. The district court docket sheets in the three other cases show that they, too, have progressed to the point of final pretrial proceedings, including substantive motion practice. Should summary judgment be granted to one of the Reynolds-counterpart defendants, NRCP 54(b) certification would afford the plaintiff the opportunity to seek and obtain immediate interlocutory review. *See State v. AAA Auto Leasing & Rental, Inc.*, 93 Nev. 483, 485, 487, 568 P.2d 1230, 1231, 1232 (1977) (affirming the dismissal of a claim under the NDTPA brought to this court on an interlocutory order certified

---

[2]The Reynolds-counterpart defendant in *Rowan* has filed a petition challenging the order denying its motion to dismiss with this court. *Philip Morris USA Inc. v. Eighth Judicial Dist. Court (Rowan)*, No. 84805 (filed June 2, 2022). Reynolds references two other cases, also individual plaintiff cases filed in Clark County by the lawyers representing Camacho—*Estate of Cleveland Clark v. Philip Morris USA Inc.*, No. A-19-802987-C and *Kelly v. Philip Morris USA, Inc.*, No. A-20-820112-C—raising the NDTPA issue, but the docket sheets in those cases show that they have settled.

SUPREME COURT
OF
NEVADA

(O) 1947A

as final under NRCP 54(b)). And in each case, including this one, the losing party will have a right of direct appeal, with the plenary review that an appeal from a final judgment affords. Unlike in *International Game Technology*, where we granted advisory mandamus review of an order denying a motion to dismiss because "an appeal [was] not an adequate and speedy legal remedy, given the early stages of [the] litigation," 124 Nev. at 198, 179 P.3d at 559, this case and its companions are sufficiently advanced that the advantages plenary review on direct appeal affords outweigh the need for immediate writ review.

Last, granting advisory mandamus to review the order denying the motion to dismiss on the merits does not promote and instead may disserve "sound judicial economy and administration." *Int'l Game Tech.*, 124 Nev. at 197-98, 179 P.3d at 559. Having undertaken to decide the merits of the motion to dismiss, the majority holds that the NDTPA allows the Camachos' claim to proceed because NRS 598.094 defines "sale" to include "any sale, offer for sale or attempt to sell," Majority op. at 8, 10;[3] it further holds that because the NDTPA is "remedial," it should be "liberally construed," without reference to the common law, *id*. at 10, 12. These are close issues and could go either way. The NDTPA provides for both private damage actions, NRS 41.600, and civil and criminal enforcement actions by the government, NRS 598.0963; NRS 598.0999. A reasonable argument can

---

[3]The Camachos did not make this argument in their opposition to the original motion to dismiss, and the district court did not address it in either its original order granting the motion to dismiss or its reconsideration order, denying the motion to dismiss. This also militates against merits mandamus review. *See Archon*, 133 Nev. at 823, 407 P.3d at 708 (declining to grant advisory mandamus where the issue pressed in the petition was not raised and resolved in district court).

be made that NRS 598.094's "attempt to sell" reference applies to government enforcement actions, not private actions by victims seeking damages. Also reasonable is the argument that the NDTPA should be construed consistent with the common law because nothing in its text directs otherwise. *See* NRS 1.030 ("The common law of England, so far as it is not repugnant to or in conflict with the . . . laws of this State, shall be the rule of decision in all the courts of this State."); *Leigh-Pink v. Rio Props., LLC*, 138 Nev., Adv. Op. 48, 512 P.3d 322, 328 (2022) (construing the NDTPA consistently with the common law, following what the court deemed one of the "first principles of statutory construction"). The merits determination here is being made by a two-to-one vote of a three-justice panel. Should the issue come to the en banc court on appeal from an eventual final judgment, the full court could depart from or refine the panel's merits determination, creating confusion and inconsistency.

For these reasons, while I concur in the judgment denying the writ, I do so on the grounds this petition does not qualify for extraordinary writ review. I respectfully dissent from my colleagues' advisory mandamus and merits determinations.

_____, J.
Pickering